**Agnes R. NUTT**

v.

**BLACK HILLS STAGE LINES, INC.,**
**a Corp., et al.**

**No. Civ. 69–33W.**

United States District Court,
D. South Dakota, W. D.

Dec. 2, 1970.

---

Curtis Ireland, Rapid City, S. D., for plaintiff.

Thomas Simmons, Robert LaFleur, William Porter, Rapid City, S. D., for defendants.

BOGUE, District Judge.

MEMORANDUM OPINION

This case arises out of an accident which occurred involving a bus, in which the plaintiff was a passenger, striking a horse. As a result of such collision, the plaintiff was thrown in the bus and sustained some injuries. The claim of the plaintiff was that, among other things, she suffered a traumatic neurosis. The jury brought in a verdict for the plaintiff, and the defendants have now moved the court to set aside the verdict of the jury which was returned on October 30, 1970, and to grant a new trial on the following grounds.

1. That the verdict is contrary to law.

2. The verdict is contrary to the evidence.

3. The evidence in this case is totally insufficient to show liability on the part

of any of the defendants, and there is no evidence to sustain the verdict of the jury herein.

4. The court erred in denying the several alternative motions of defendants for (a) a continuance or (b) to strike plaintiff's claim of traumatic neurosis allegedly resulting from the accident in question, which motions were based upon the effective denial of defendants' rights under the Federal Rules of Civil Procedure to engage in appropriate discovery proceedings to discover the nature of and basis for such claim resulting because of the late notice of such a claim and plaintiff's failure to comply with the spirit of the Federal Rules of Civil Procedure in failing to supply additional answers to the continuing interrogatories of the defendant, Robert Mechaley.

5. The court erred in permitting plaintiff's attorney, on direct examination of the witness, Dr. R. Natarajan, to ask the witness to relate the history given to him by plaintiff and in allowing said witness to relate said history as allegedly given to him by plaintiff, and in subsequently allowing said witness to render opinions based upon said history as allegedly related to him, over timely objection thereto.

6. The court erred in submitting to the jury in its instructions the item of damage of expenses for medical care and treatment over the specific objection thereto by defendants.

7. The court erred in submitting to the jury in its instructions the item of damage of loss of future earning capacity over the specific objection thereto by defendants.

8. The court erred in submitting to the jury in its instructions the item of damage of future disability over the specific objection thereto by defendants.

9. The court erred in submitting to the jury in its instructions the item of damage of past loss of earnings over the specific objection thereto by defendants.

10. The court erred in submitting to the jury in its instructions the item of damage of expenses for household services over the specific objection thereto by defendants.

11. The court erred in refusing to give proposed instruction No. 1 of defendant Black Hills Stage Lines, Inc.

12. The court erred in denying to defendants, Kenneth Clark and Robert Mechaley, the right to cross-examine the witness, Dr. Harold Fromm.

13. The verdict of the jury herein is excessive and appears to have been given under the influence of passion or prejudice.

This court at this time specifically addresses its attention to the grounds set out in No. 5 which concerns the testimony of Dr. R. Natarajan. The testimony of Dr. Natarajan was based in part upon subjective symptoms given to him by the plaintiff, and it is uncontradicted that he made the examination for the purpose of testifying as an expert witness at the trial. It must be remembered that during the course of the trial and prior to the testimony of Dr. Natarajan, the daughter of the plaintiff testified as to the present actions, attitudes and emotions of the plaintiff and of her inability to do certain things which she could do prior to the accident in question. Additionally, it should be recalled that the plaintiff, prior to the testimony of Dr. Natarajan, set forth all of the symptoms upon which Dr. Natarajan placed his opinion in part. She testified that she was in good health prior to the accident, that she was not nervous, that she did not have headaches, but that after the accident she felt depressed, nervous, irritable, and that she developed severe headaches. Additionally, Dr. Natarajan examined her and examined the records of other doctors as to plaintiff's condition.

There appears to be a split of authorities as to whether or not statements of the patient to a doctor who is preparing to be an expert witness in the case should be admissible. The most enlightened view, however, is that such a restriction only adds a troublesome complication on rather insubstantial grounds and that such a limitation would be of doubtful

wisdom. The limitation seems to hamper a proper practice of personal injury claimants in preparing their cases for trial, that of securing qualified physicians or psychiatrists to make an examination for the purpose of later aiding the court and the jury in the understanding of the claimant's physical state. The concern of some courts that such professional men of wide reputation might be more effective as witnesses than perhaps differently qualified doctors who have treated the patient, is no argument against their evidence. The defendants in this case had an opportunity to obtain a psychiatrist of their own choosing and this they did not do. If the doctor's expert opinion should be allowed in evidence, though based partly on what was told him when he was called in solely to prepare him to testify, as it seems it should, he should be allowed, in accordance with the general rule as to experts, to recount as part of the explanation of the basis of his opinion, the statements made to him by the patient, i. e. the "history" of the case. Such an explanation is to some extent a necessary measure by which to assess the value of the opinion. Additionally, it must not be forgotten that the examination of a psychiatrist is substantially different from that of a surgeon or a medical doctor. Of necessity he was required to obtain the symptoms from the patient. In this particular case, he first determined that the medical doctors were unable to find anything wrong with the plaintiff after having made a series of tests, and of course the medical doctors did not testify that they were qualified psychiatrists and they did not rule out the possibility of a psychosis or neurosis of some type. This is what sets this case apart from most cases where a psychiatrist is involved. He does not ordinarily base his opinion on objective findings. Without the freedom from the imprisoning chains of the evidence restriction the plaintiff is deprived of the right to present all elements of his claim and cause of action. In Kaufman v. Kaufman, 82 U.S.App.D.C. 397, 164 F.2d 519, a generally similar problem is presented where it is held that in a wife's action for annulment of a marriage on ground of husband's matrimonial capacity, a psychiatrist who had examined the husband should have been permitted to answer the question as to whether the husband was matrimonially incapacitated at the time of marriage, a result of psychogenic causes, notwithstanding that his diagnosis as to husband's impotence would rest largely upon history and symptoms described to him by the husband. In other words, the court held that it was proper for the doctor to base his diagnosis as to the defendant's impotence upon the history and the symptoms which the latter related to him, and the trial justice should have permitted him to answer the question propounded to him.

This court will not comment upon the other grounds set forth by defendants as part of the motion to set aside the verdict of the jury. The motion made by said defendants will be denied and the counsel for the plaintiff will prepare the necessary order to effect the decision herein set forth.

An additional matter concerning this case is before the court at this time. That is a motion to disallow taxation of costs made by the attorney for Black Hills Stage Lines. The court will grant a portion of that motion and amend the costs in the following manner. Patricia Mullen shall receive attendance fees and subsistence fees for three days only. That will be for one day at the trial and two days for the necessary time in going to and returning from trial, and her mileage shall be limited to 100 miles to and from, or a total of 200 miles; making her costs a total of $128. The court will allow the medical report of Dr. Natarajan and the cost of the diagram of the Highway Patrol, but will disallow any expense for photographs. All other costs will stand as taxed.